UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON AARON DAUL,

        Plaintiff,

  v.                                      Case No. 17-C-511

JOHN AND JANE DOES,
M. VETSCH, N. CIESLEWICZ,
J. NELSON, J. TRINKNER,

        Defendants.

**ORDER**

Plaintiff Jesse Daul, a Wisconsin state prisoner who is representing himself, filed a complaint alleging that defendants violated his civil rights. This case was originally assigned to U.S. Magistrate Judge William Duffin; however, because not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was randomly reassigned to this U.S. District Court judge for the limited purpose of screening the complaint. The case will be returned to Judge Duffin after entry of this order.

This matter is before the Court on plaintiff's motion to proceed without prepayment of the civil case filing fee (ECF No. 2), his motion for injunctive relief (ECF No. 7), his motion for an extension of time for service (ECF No. 13), his motion for leave to refile his consent to magistrate judge form (ECF No. 15), his motion to file an amended complaint (ECF No. 17), his second motion to file his amended complaint (ECF No. 18), and for screening of his second amended complaint (ECF No. 18-1).

### *MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE*

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was incarcerated when he filed his complaint. The PLRA gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee. On April 12, 2017, Judge Duffin waived plaintiff's obligation to pay an initial partial filing fee after finding that he could not afford to do so. The Court will grant plaintiff's motion to proceed without prepayment of the full filing fee; he is required to pay the $350 filing fee over time in the manner explained at the end of this Order.

### *PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF*

Plaintiff filed a motion for injunctive relief. It is not entirely clear what relief plaintiff is seeking; however, it appears that he is contesting the validity of certain Brown County Jail policies regarding the provision of legal supplies (the Jail's policy to provide pencils rather than pens, to limit free envelopes to one per week, refusing to provide free copies for certain documents) and the Jail's grievance procedures (requiring inmates to grieve through the chain of command).

The Supreme Court has repeatedly made clear that prison officials have "broad administrative and discretionary authority over the institutions they manage . . . ." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). These types of administrative policies about which plaintiff complains are the very type with which the Court will not interfere, especially because it is clear from plaintiff's filings that, despite these policies, he is able to freely communicate with the Court. The Court will deny this motion.

### PLAINTIFF'S MOTIONS TO AMEND HIS COMPLAINT

Plaintiff filed his original complaint on April 10, 2017. On August 28, 2017, he filed a motion to amend his complaint along with a proposed amended complaint. About two weeks later, he filed another motion to amend his complaint along with a proposed second amended complaint. The Court will allow plaintiff to amend his complaint as proposed in his second amended complaint. The clerk's office will docket the document located at ECF No. 18-1 as the operative complaint in this case.

### SCREENING OF THE SECOND AMENDED COMPLAINT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon her by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); see also *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The Court is obliged to give a plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## *ALLEGATIONS IN THE COMPLAINT*

Plaintiff alleges that, on March 16, 2017, defendant M. Vetsch, a correctional officer at the Brown County Jail, moved plaintiff to temporary lock-up (TLU) because plaintiff asked to be placed in observation status in order "to prevent any incident in which he could harm someone else." (ECF No. 18-1 at 2.) Plaintiff clarifies that he did not indicate that he was suicidal. Although not entirely clear, it appears that, following plaintiff's request, Vetsch wrote plaintiff a conduct report because he "perceived a threat of imminent danger." (*Id*.) Plaintiff alleges that Vetsch lacked the authority to move him to TLU and that Vetsch threatened further discipline for disobeying a direct order if he did not move to TLU.

Defendant N. Cieslewicz was working as the Housing Security Supervisor that day. According to plaintiff, Cieslewicz listened to plaintiff's "frustrations with the legal supplies, current feelings, comments to Vetsch and also his grounds/reasons for making the request." (*Id*.) Cieslewicz allegedly told plaintiff that he did not perceive plaintiff's comments to Vetsch as threatening, and he understood why plaintiff was requesting to be placed in observation status. Despite these acknowledgments, Cieslewicz also denied plaintiff's request to be moved to observation status.

Plaintiff alleges that Cieslewicz left the unit without taking any disciplinary action, but he returned about two hours later to make "a disposition offer." (*Id.* at 4.) Plaintiff asserts that Cieslewicz again told plaintiff that he did not think plaintiff's comments to Vetsch were threatening, and he told plaintiff that Vetsch had informed Cieslewicz of his intent to write plaintiff

4

a conduct report. According to plaintiff, Cieslewicz assured plaintiff he would make a statement for the due process hearing about his perceptions of plaintiff's intent in making his statements to Vetsch. Plaintiff states that he did not do so.

Plaintiff alleges that the next day, defendant J. Nelson held a due process hearing at his cell door without any audio, witnesses, or a staff advocate involved. Plaintiff asserts that he asked for Cieslewicz's statement, but all that had been recorded in the computer system was that "Daul was not suicidal." (*Id.* at 5.) Plaintiff asserts that this impacted the hearing outcome. As a result of being found guilty of the conduct report, plaintiff was found to have violated his parole. Plaintiff was kept in restricted housing for another forty days. Plaintiff alleges that he was in restricted housing for nearly fifty days in total.

Plaintiff states that defendant J. Trinkner "upheld this due process." (*Id.*) Plaintiff explains that the appeal was completed three hours after the hearing and prior to the hard-copy of the hearing's disposition notice being delivered.

Plaintiff states that, while in restrictive housing, he did not enjoy the same access to legal materials as those in general population. He also states that being in restrictive housing was very stressful for him because of his mental health state. Plaintiff explains that the Jail removed his sheets, denied him shampoo, did not allow him to possess a clock, supplied only vinegar as a cleaning supply, had less than six hours of dimmed lights, and did not allow him to make phone calls. He also alleges that, while in restrictive housing, he received watered down and undersized portions of food. Plaintiff alleges that he filed grievances about the food, but no one investigated the grievances or took "proper corrective responses." (*Id*. at 7.)

*THE COURT'S ANALYSIS*

According to plaintiff, he was on parole/supervised release while incarcerated at the Jail. *Id.* at 5; *see also* http://offender.doc.state.wi.us/lop/ (indicating plaintiff had been released from Green Bay Correctional Institution to supervision on February 14, 2017). As such, plaintiff's status at the Jail was one of a convicted prisoner, not a pretrial detainee. *See Joost v. Cornell Corrections Inc.*, Case No. 97-512T, 1998 WL 939531, at *2 (D.R.I. Dec. 11, 1998) (holding that plaintiff's "dual status" argument was not persuasive: the "fact that for a portion of the time that he was incarcerated at Wyatt he was awaiting retrial on the firearm charge does not obviate the fact that he was also imprisoned as a convicted felon.") In other words, plaintiff did not lose his status as a convicted prisoner merely because he may have committed additional crimes for which he had not yet been tried. This distinction in plaintiff's status is important in determining the constitutional amendments under which plaintiff's potential claims may arise.

Plaintiff first argues that Vetsch violated his constitutional rights when he issued plaintiff a conduct report for making threats and placing plaintiff in TLU pending a hearing on the conduct report. Plaintiff fails to state a claim against Vetsch based on these allegations.

The Seventh Circuit Court of Appeals has acknowledged that discipline in a correctional institution is difficult, "but it is essential if the prison is to function and provide for the care, safety, and security of staff and inmates." *Soto v. Dickey*, 744 F.2d 1260, 1267 (1984). With this in mind, the Court of Appeals has instructed that prison officials "must be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security." *Id.* at 1269.

Plaintiff concedes he told Vetsch that, although he was not suicidal, he wanted to be placed in observation status because he was frustrated and was afraid he might hurt someone. Plaintiff alleges that Vetsch misunderstood his comments to be threats to harm others, when in fact, plaintiff was merely trying to avoid triggers that had led to past incidents. Regardless of plaintiff's intent in making the statements, Vetsch's response to the statements was not so egregious that it implicates the Eighth Amendment. "In order to establish a violation of the Eighth Amendment, a plaintiff must show that prison officials intentionally inflicted excessive or grossly severe punishment on him or that the officials knowingly maintained conditions so harsh as to shock the general conscience." *Id.* at 1268. Vetsch issued a conduct report and moved plaintiff to TLU for one day prior to a hearing on that conduct report. That response falls far short of satisfying the high standard required to state an Eighth Amendment claim.

It is also inconsequential that Vetsch may not have had authority under DOC policy to act without a supervisor's pre-approval because violations of state laws or regulations are not, in and of themselves, a basis for a federal civil rights suit. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 206 (7th Cir. 2010).

Plaintiff next agues that Cieslewicz violated his constitutional rights when he denied plaintiff's request to be placed in observation status. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997); *Scarver v. Litscher*, 434 F.3d 972 (7th Cir. 2006) ("It is well settled that the Eighth Amendment protects the mental health of prisoners no less than their physical health.") This standard contains both an objective element (that the medical needs be sufficiently serious) and a

7

subjective element (that the officials act with a sufficiently culpable state of mind). *Gutierrez*, 111 F.3d at 1369.

Plaintiff fails to allege facts that support either element. First, plaintiff concedes that he was not suicidal. He asserts only that he told Cieslewicz that he was frustrated and that he had reacted poorly in the past to similar frustrations and so he wanted to avoid an incident. Feelings of frustration are without doubt common in Jail, and plaintiff's explanation that he *might* poorly respond to those frustrations were too vague and speculative to be considered sufficiently serious enough to warrant immediate attention. Further, plaintiff explains that Cieslewicz spent a significant amount of time listening to all of plaintiff's concerns and providing feedback to plaintiff. These actions do not suggest Cieslewicz was indifferent to plaintiff's mental health needs. Plaintiff obviously disagrees with the correctional officers' decisions to refuse his request to be moved to observation status, but disagreement is not enough, on its own, to state a claim.

Next, plaintiff argues that Nelson violated his right to due process when he found him guilty of the conduct report and gave him forty days in disciplinary segregation. Plaintiff alleges that Nelson did not record the hearing, he did not allow witnesses, and he did not provide a staff advocate. Because plaintiff was a convicted prisoner, the procedural protections of the Due Process Clause would have been triggered only if Nelson's actions implicated a constitutionally protected liberty interest. *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). They did not.

"The Due Process Clause does not necessarily protect prisoners against the imposition of disciplinary segregation." *Id.* Instead, "a prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Id*. at 608. Plaintiff alleges that he spent fifty days in disciplinary segregation, where he was denied sheets and shampoo, had limited access to legal supplies, was placed on a restricted diet, and where the lights were dimmed for less than six hours each day.

The Court finds that neither the duration of plaintiff's confinement in segregation nor the conditions endured by plaintiff while in segregation were so extreme so as to require the procedural protections of the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743-45 (7th Cir. 2013). As such, plaintiff fails to state a due process claim against Nelson. Because Nelson's actions fail to implicate a constitutionally protected liberty interest, plaintiff also fails to state a claim against Trinkner for affirming Nelson's decision.

Plaintiff also fails to state a claim based on his allegations that the fifty days in segregation were unusually stressful for him because of his mental health issues. Although his mental health issues *may* constitute an objectively serious medical need (plaintiff's complaint does not contain sufficient factual matter for the Court to make that inference), plaintiff does not allege that he alerted anyone to the stress he was suffering or that he sought and was denied treatment. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Without allegations that someone knew about plaintiff's struggles and failed to adequately respond, plaintiff fails to state a claim on these allegations.

The Court will, however, allow plaintiff to proceed against John Doe(s) based on his allegations that he was served "inconsistent, watered down and undersized portions" of food that "exacerbated [his] mental health condition." (ECF No. 18-1 at 7.) "The Constitution mandates that

9

prison officials provide inmates with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it."*Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citation and internal quotes omitted). Plaintiff's allegations that he complained about the limited nutritional value of the food without response are sufficient for him to proceed on an Eighth Amendment claim.

Because plaintiff has not been allowed to proceed against any named defendants, the Court will order that John Gossage, the Brown County Sheriff, be named as a defendant for the limited purpose of identifying the Doe defendants. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996). Sheriff Gossage does not have to respond to plaintiff's complaint. Plaintiff may send written questions or document requests (*see* Fed. R. Civ. Pro. 33 and 34) to Sheriff Gossage limited to the topic of identifying the Doe defendants. Plaintiff may not serve discovery requests on any other topic, and Sheriff Gossage need not respond to discovery requests on any other topic. Once plaintiff has identified the real names of the Doe defendants, he should file a motion to substitute the real names for the Doe placeholders. The Court will then dismiss Sheriff Gossage as a defendant.

### *Miscellaneous Motions*

On July 6, 2017, plaintiff filed a motion for an extension of time by which he may serve the defendants. The Court will order the U.S. Marshals to serve a copy of plaintiff's complaint on Sheriff Gossage. Plaintiff's motion is unnecessary and the Court will deny it as such.

On August 14, 2017, plaintiff filed a motion for leave to re-file his consent form, agreeing to jurisdiction by U.S. Magistrate Judge William Duffin. It appears that plaintiff is unsure whether the Court received the form because it was included with documents he filed in another case. The

docket in this case shows that plaintiff's consent form was received by the Court on April 12, 2017. As such, the Court will deny plaintiff's motion as unnecessary.

**NOW, THEREFORE, IT IS ORDERED** that plaintiff's motion for leave to proceed without prepayment of the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for injunctive relief (ECF No. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for an extension of time to serve defendants (ECF No. 13) and motion for leave to re-file consent form (ECF No. 15) are **DENIED** as unnecessary.

**IT IS FURTHER ORDERED** that plaintiff's motion to file an amended complaint (ECF No. 17) is **DENIED** as moot, and his second motion to file an amended complaint (ECF No. 18) is **GRANTED**. The Court directs the clerk's office to docket the proposed amended complaint located at ECF No. 18-1; this shall be the operative complaint in this case.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Brown County Sheriff John Gossage pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The Court is not involved in collection of the fee.

**IT IS FURTHER ORDERED** that Sheriff John Gossage need not respond to plaintiff's complaint; however, he must respond to plaintiff's discovery requests limited to the topic of identifying the John Doe defendants against whom the Court has allowed plaintiff to proceed.

**IT IS FURTHER ORDERED** that plaintiff must file a motion to substitute the real names of the defendants for the Doe placeholders by **January 31, 2018**. If plaintiff fails to do so, the Court may dismiss this case based on plaintiff's failure to diligently prosecute it.

**IT IS FURTHER ORDERED** that defendants M. Vetsch, N. Cieslewicz, J. Nelson, and J. Trinkner are **DISMISSED**.

**IT IS FURTHER ORDERED** that the agency having custody of plaintiff shall collect from his institution trust account the $350 filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail

documents to the Court.[1] If plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The Court further advises plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

**IT IS FURTHER ORDERED** that the clerk's office shall return this case to Magistrate Judge William Duffin for further proceedings.

Dated this   2nd   day of November, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.